UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
(Central Division)

| | |
|---|---|
| CINDY MURRAY, | |
| Plaintiff, | Case No. 1:15-cv-59 |
| v. | **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |
| FIRST NATIONAL BANK OF OMAHA, | |
| Defendant. | |

COMES NOW Defendant, First National Bank of Omaha ("FNBO"), and submits the following Reply in Support of Its Motion for Summary Judgment.

## **REPLY**

Plaintiff appears to rely on the overly simplistic logic that she doesn't have to make her intentions clear with regarding to revoking consent, it's a strict liability statute and everything else surrounding the alleged revocation is superfluous. Plaintiff also repeatedly knocks down arguments that were not made in FNBO's Motion for Summary Judgment. Remarkably, Plaintiff opens her Response with the statement that due to the "repeated harassment" that she was "*forced to suffer*, she filed the instant lawsuit…" *See* Docket 30, at 1. But Plaintiff fails to address or acknowledge that this so-called forced suffering was due to Plaintiff's own attorneys requesting that she endure this alleged harassment or provide periodic updates of the calls on the non-revoked account until the satisfactory number of potential violations was reached.

Plaintiff failed to provide any substantive evidence refuting FNBO's Motion for Summary Judgment and in fact, Plaintiff neglected to even provide a sworn statement herself refuting any of the arguments or evidence in support of FNBO's motion.

1

A.  There was No Revocation of Consent on the Non-Scheels Visa Credit Card Account

Plaintiff spends a lot of time in her Response defending issues and arguments that were not made by FNBO.  It is undisputed that the TCPA does not expressly address revoking previously provided consent to be called at a given number regarding an existing debt.  However, it has become commonly understood via case law and other interpretations that an individual can revoke consent under the TCPA.  Revocation of consent can be orally or in writing – another issue not contested by FNBO.  Likewise, the FCC has interpreted the TCPA to mean that individuals can revoke consent by any "reasonable" means.  The FCC failed to explain or provide guidance as to what "reasonable" revocation means – a topic that was thoroughly discussed and argued in front of the United States Court of Appeals for the District of Columbia in *ACA International v. FCC,* Case No. 15-1211 (D.C. Cir. July 10, 2015)[1].

Plaintiff contends that the "TCPA does not permit callers to compartmentalize its calls," but Plaintiff fails to provide any authority for this comment.  *See* Docket 30, at 2.  In fact, Plaintiff fails to address any of the arguments that suggest the logical conclusion that revocation, like consent in the first place, is debt specific.  Plaintiff does not dispute or comment on the fact that consent to call a particular number is "compartmentalized" regarding a specific debt and/or an "existing debt" as interpreted by the FCC.  *See* Declaratory Ruling, 23 FCC Rcd 559, 566, para. 9 (2008) (2008 TCPA Order); s*ee also Id*. at ¶ 1.

Plaintiff unconvincingly alleges that her intentions were abundantly clear because she said do not call my cell in relation to her Scheels Visa account and FNBO's notes on the Scheels Visa account also documented this.  But Plaintiff fails to acknowledge or dispute that FNBO

---

[1] Oral Argument took place on October 19, 2016.  No ruling has issued as of today's date.

ceased calling on the Scheels account and the revocation was effective concerning the consent previously given to call her number regarding the Scheels debt. Plaintiff goes on to build a straw man and imply that FNBO's position that certain "magic words" are needed for revocation. *See* Docket 30, at 8. Plaintiff apparently misses the point. The revocation regarding the Scheels account was effective – the "magic words" "don't call my phone" was a proper revocation for the Scheels account.

Contrary to Plaintiff's statement that it is FNBO's position that the directive to quit calling this number regarding a specific debt is "inconspicuous", the inconspicuousness of Plaintiff's actions was that she did not mention her other account, she immediately hung up the phone, and that she failed to ever make an effort to explain that she did not want calls on the non-Scheels account any longer. Instead, Plaintiff and her attorneys sat back and watched the phone ring on the non-Scheels account and provided periodic updates all while Plaintiff was apparently suffering until she couldn't take it any longer on the alleged 145th call.

Plaintiff's response seems to suggest that a caller can call a number for several debts or purposes as long as the caller received consent for <u>one</u> particular debt, e.g., a credit application for a credit card, regardless if the called party consented to be contacted for other purposes. *See* Docket 30, at 9-10 (stating "the TCPA states that any call that is placed must have consent of the called party…"). As discussed in FNBO's Brief in Support of Its Motion for Summary Judgment, a caller needs consent to call a number regarding a particular debt, not just the number itself. FNBO could not simply use a number provided by Plaintiff on a mortgage application to auto-dial Plaintiff concerning a defaulted credit card account with FNBO, unless Plaintiff also provided – consented to receive calls at a particular number - that same number in connection with the credit card debt. *See* Docket 29, at 3-4 (quoting the FCC in how consent is obtained to

call a number "regarding the debt", the "existing debt", and/or "the transaction that resulted in the debt"). Likewise, FNBO could not use the consent to call Plaintiff's cellular number it received from Plaintiff's credit card application to auto-dial Plaintiff's cell phone for a mass-solicitation campaign for home equity lines of credit or car loans or for any other purpose.

The reverse logic is also true. Since an individual consents to be called at a cellular number concerning a particular number when the person provides that number to the caller in connection with the debt, e.g., on the application for a credit card, then if an individual no longer wants to be called at that number regarding the debt, the individual should clearly and expressly indicate so. When FNBO called Plaintiff about her delinquent Scheels credit card account and both parties clearly understood that the purpose of the call was to discuss the Scheels account, and the Plaintiff told Sharon (FNBO representative) "do not call" this number any longer and does not mention any other accounts that FNBO may have with her, it was a reasonable interpretation that Plaintiff no longer wanted to be called regarding her Scheels account. FNBO should not be left speculating whether Plaintiff was revoking consent on any and all accounts that she may have provided FNBO consent to call her at a particular number regarding those accounts.

1. Revocation Must Be Clear

Plaintiff misses the point of the comparison between the Fair Debt Collection Practices Act's ("FDCPA") provision concerning cease communicating about an existing debt and revoking consent to be called at a number regarding a particular debt. For example, if FNBO communicated with Plaintiff regarding the Scheels account and Plaintiff wrote a letter to FNBO referencing FNBO's letter and/or the Scheels account directing FNBO to "cease communicating" with her, unless Plaintiff mentioned another debt, this "cease communication" request would not

be actionable under the FDCPA for any other debt that she may have with FNBO. The point being that since the TCPA is silent on a number of issues, including authorizing revocation of consent in the first place, a reasonable interpretation of the statute would be that revocation of consent needs to be clear and indicate which previously provided consent is being revoked. Not a vague-blanket revocation standard that Plaintiff is trying to have the Court adopt.

Plaintiff cites to a Western District of Texas case as support for her position, but this case provides little guidance, if any, to the issue in this case. *See* Docket 30, at 10 (citing *Adamcik v. Credit Control Servs. Inc.*, 832 F.Supp.2d 744, 751 (W.D. Tex. 2011). The *Adamcik* court discussed whether "debt collectors" were exempt from the TCPA since the Fair Debt Collection Practices Act regulated "debt collectors" and whether revocation of consent needed to be in *writing* - neither of which are before this court.

Plaintiff goes on to misconstrue FNBO's arguments comparing the *Saunders* and *Soulliere* cases. *See* Docket 30, at 11. FNBO has already readily admitted that the current state of the law under the TCPA and revoking consent is unsettled. The references to the *Saunders* and *Soulliere* cases were merely illustrative, especially since there is very little case law, if any, with facts similar to the ones in this case.

Contrary to Plaintiff's statement that these cases were cited for the argument that revocation is debt specific, these cases were cited for the proposition that revocation needs to be "clear"! The *Saunders* court pointed out that because the debtor was intentionally vague in attempting to revoke previously provided consent, the revocation was "meaningless" - ineffective. *See Saunders v. NCO Fin. Sys. Inc.*, 910 F. Supp. 2d 464, 468-69 (E.D.N.Y. 2012).

Interestingly, Plaintiff alleges that FNBO is "confused" in referencing the *Soulliere* case. *See* Docket 30, at 12. It is apparent where the confusion lies. Again, the *Soulliere* court

provided a compelling standard for revoking consent. And the Court is charged with instructing the jury on the law, not the parties, regardless if the parties agree to the state of the law. Plaintiff attempts to differentiate the facts of these cases, but does not address the black letter law that comes out of these cases because Plaintiff's position is defenseless to phrases like "clearly and expressly" revoke consent regarding a debt, "cannot be wavering" and "clear, unambiguous and specific so that [the caller] knows exactly what is being revoked and when it was revoked." *See Soulliere v. Central Florida Investments, Inc.*, 8:13-cv-02860-JDW-AEP, at Docket 94, p. 7 (M.D. Fla.); *see also Welch v. Green Tree Servicing LLC*, Adv. No. 8:13-ap-00344-MGW (Bankr. M.D. Fla. 2015) (stating revocation of consent requires "at a minimum—express and clear revocation of consent; implicit revocation will not do.").

Plaintiff has already admitted that she was far from "clear, unambiguous and specific so that [FNBO] kn[ew] exactly what is being revoked and when it was revoked." Plaintiff acknowledged that the call was only pertaining to the Scheels account, the other debt that she had with FNBO was never discussed, FNBO was never given the opportunity to clarify Plaintiff's intentions because she immediately hung up the phone, Plaintiff did not feel it was necessary to ever clear up her intentions, but she was very diligent on keeping tallies of phone calls and providing her attorneys with updates.

Plaintiff comments that FNBO "failed to offer any legal authority to meet its burden that revocation is account-specific…" *See* Docket 30, at 12. It is undisputed that Plaintiff provided FNBO consent to call her cellular number regarding both accounts. FNBO's burden was to prove that it had consent to call Plaintiff's cellular number on each account – this is undisputed. It is Plaintiff's burden, not FNBO's, to show that she revoked consent on each account. Plaintiff made no effort to revoke consent on the non-Scheels Visa account.

6

FNBO provided ample authority describing how revocation needs to be "clear," "express," "not implicit," intentions need to be clear on exactly what is being revoked, and "reasonable". FNBO also pointed out the Federal Communications Commission's interpretations of the TCPA referencing revocation of consent regarding specific debts in which the caller received consent to call and the similarities with the FDCPA being debt specific. On the other hand, Plaintiff has provided no authority supporting her position that she can be deliberately vague and receive some blanket revocation regardless if other debts were discussed and this should be considered "reasonable" and "clear" regarding her intentions to revoke consent.

    2. <u>Plaintiff's Conduct</u>

Instead of addressing some of the concerning issues surrounding Plaintiff and her attorneys prior to filing this suit, Plaintiff relies on the fact that the TCPA is a strict liability statute and Plaintiff's systematic plan is irrelevant. FNBO pointed out the Plaintiff's pre-suit conduct for two reasons: (1) it's concerning; and (2) it is more evidence that Plaintiff was intentionally vague with her attempted revocation of consent on an account that was never discussed.

Plaintiff failed to: provide any sworn statement resisting this motion; explain why she paid her current attorneys prior to attempting to revoke consent to be called on her cellular number; explain why she had to suffer allegedly harassing phone calls, keep notes, and provide her attorneys with updates until she received over 100 calls on her non-Scheels Visa account; explain why she never made any effort to discuss the non-Scheels account with FNBO; or ensure that her alleged intentions were clear regarding future calls on any and all obligations Plaintiff had with FNBO.

7

Plaintiff makes the incredulous statement that if she hadn't kept a phone log, then FNBO would have moved for summary judgment arguing that the calls did not take place. But Plaintiff has provided a cellular phone company's record of the calls, not Plaintiff's handwritten notes, to support her position in this case. The probable purpose of Plaintiff's phone record keeping system was to make sure that Plaintiff and her attorneys reached a satisfactory number of potential damages to compensate someone.

Plaintiff's alleged suffering could have easily been avoided had she made any effort to discuss the non-Scheels account or made her intentions clear. Plaintiff stuck to her presumably scripted line of "do not call", immediately hung up, and refused to discuss the non-Scheels account with FNBO.

## **CONCLUSION**

The TCPA does not address how an individual "revokes" consent to be called at a particular number via an auto-dialer. Revocation of consent under the TCPA needs some clarity and the District of Columbia Court of Appeals will hopefully shed some light on this issue. However, a reasonable interpretation of the statue, the case law, and the FCC's interpretations, indicate that providing a cellular number on an application for credit, which happened in this case twice, the individual consents to allow that creditor to call the cellular number for that debt, not for any and all possible reasons that the caller may want to autodial the number. Likewise, when the individual no longer wants to be called at the number regarding the debt that they provided during the application process for the debt, then the individual needs to "clearly," "expressly" explain what is being revoked and when.

Plaintiff's attempted revocation to be called regarding her non-Scheels Visa account was far from clear or reasonable and when FNBO attempted to ascertain her intent, it heard a dial

8

tone. When FNBO attempted to communicate with the Plaintiff regarding her non-Scheels account, Plaintiff and her attorneys were sitting back smiling. By allowing individuals to be intentionally vague and watch potential damages accumulate is certainly not what the TCPA was intended for and not the type of conduct that should be rewarded. Based on the foregoing reasons, FNBO respectfully requests that this Honorable Court grant its Motion for Summary Judgment.

Dated: November 21, 2016

                                             FIRST NATIONAL BANK OF OMAHA

                                             By: /s/ Cory J. Rooney
                                             Cory J. Rooney, #18886
                                             1299 Farnam Street, Suite 300
                                             Omaha, NE 68102
                                             Phone: 402.401.2793
                                             Fax: 402.401.2701
                                             Email: rooneylaw@outlook.com