# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| CINDY MURRAY,<br><br>Plaintiff,<br><br>vs.<br><br>FIRST NATIONAL BANK OF OMAHA,<br><br>Defendant. | No. 1:15-cv-00059-JAJ<br><br>**ORDER** |

This matter comes before the Court pursuant to Defendant's October 14, 2016 Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. [Dkt. No. 25]. Plaintiff filed a Motion for Partial Summary Judgment on November 1, 2016 and resisted Defendant's motion on November 11, 2016. [Dkt. Nos. 27, 30]. Defendant replied to the resistance on November 21, 2016. [Dkt. No. 31]. For the reasons that follow, Defendant's Motion for Summary Judgment is **GRANTED**.

## I. STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiff Cindy Murray ("Murray") is a resident of Council Bluffs, Iowa. Defendant First National Bank of Omaha ("FNBO") is a national bank headquartered in Omaha, Nebraska. On or about June 9, 2014, Murray applied for and received a Visa credit card from FNBO, account ending in 0106. On the application for credit, Murray provided her cellular telephone number to FNBO. On or about February 19, 2015, Murray applied for and received a Visa Scheels credit card from FNBO, account ending in 7030. On the application for the second line of credit, Murray again provided her cellular telephone number to FNBO.

On August 25, 2015, an FNBO employee, Sharon, called Murray on her cellular telephone regarding her Scheels account. During the call, Murray requested that FNBO not call her cellular telephone and quickly hung up. At Murray's deposition, she was questioned about the abrupt ending to the telephone call:

> Q. Well, why did you hang up so quickly after you said, "Don't call my cell phone?"
> A. What more is there to talk about?
> Q. Well, I think Sharon was trying to ask you a couple questions, and you

1

> already disconnected.
> A. I don't need to talk to her anymore. I'm well aware that I owed money on the bill. I couldn't afford to pay it. I asked her to quit calling my cell phone, and then they were calling four or five times a day after that.

[Dkt. No. 25-4 Pg. 9–10]. FNBO states that it never called Murray's cellular telephone regarding her Scheels account after her August 25, 2015 request. Murray denies this claim, asserting that FNBO called her 145 times following the August 25, 2016 conversation. FNBO and Murray never spoke again after the August 25, 2015 phone conversation.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Med. Liab. Mut. Ins. Co. v. Alan Curtis L.L.C.*, 519 F.3d 466, 471 (8th Cir. 2008); *Kountze ex rel. Hitchcock Found. v. Gaines*, 536 F.3d 813, 817 (8th Cir. 2008) ("[S]ummary judgment is appropriate where the pleadings, discovery materials, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law."). In making this determination, the Court must examine the evidence in the light most favorable to the nonmoving party. *See HDC Med., Inc. v. Minntech Corp.*, 474 F.3d 543, 546 (8th Cir. 2007).

To survive a motion for summary judgment, a plaintiff must "set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e). "[A]n issue of material fact is genuine if the evidence is sufficient to allow a reasonable jury verdict for the nonmoving party." *Great Plains Real Estate Dev., L.L.C. v. Union Cent. Life Ins. et al.*, 536 F.3d 939, 944 (8th Cir. 2008) (internal citation omitted). "A genuine issue of fact is material if it 'might affect the outcome of the suit under the governing law.'" *Saffels v. Rice*, 40 F.3d 1546, 1550 (8th Cir. 1994) (internal citation omitted). "'[T]he substantive law will identify which facts are material.'" *Guinan v. Boehringer Ingelheim Vetmedica, Inc.*, 803 F. Supp. 2d 984, 993 (N.D. Iowa 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## III. ANALYSIS

Murray's Complaint is stated in one count. Count I alleges that FNBO violated the Telephone Consumer Protection Act by placing automated calls to her cellular telephone after she

claims she revoked any consent, either explicit or implicit, for FNBO to call her cellular telephone. [Dkt. No. 1]. Murray states that she is entitled to an award of $500.00 in statutory damages for every negligent violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and $1500.00 for every knowing and/or willful violation of the TCPA pursuant to 47 U.S.C. § 227(b) (3)(B) and 47 U.S.C. § 227(b)(3)(C). *Id.* at 2–3. FNBO filed an Answer denying all of the allegations in Murray's Complaint, except those constituting admissions against Murray's interest, and asserting eight affirmative defenses including: failure to state a claim upon which relief can be granted, unclean hands, waiver, estoppel, failure to mitigate damages, consent, non-intentional violations, and the bad-faith of Murray. [Dkt. No. 3].

The Telephone Consumer Protection Act ("TCPA") makes it unlawful for any person "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice" to several different types of telephone lines, in this case, a cellular telephone. 47 U.S.C. § 227(b)(1)(A)(iii). The Federal Communications Commission ("FCC") has concluded "that the provision of a cellular telephone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cellular telephone subscriber to be contacted at that number regarding the debt" and "that such calls are permissible." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, 23 F.C.C.R. 559, 564 ¶ 9 (F.C.C. Jan. 4, 2008) [hereinafter "2008 FCC Ruling"]; *See also Soppet v. Enhanced Recovery Co. LLC*, 679 F.3d 637 (7th Cir. 2012), *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036 (9th Cir. 2012). The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." *Id.* at 564–65 ¶ 10. The parties agree that Murray provided her cellular telephone number to FNBO twice, separately for each credit card, thereby consenting to be called on both accounts.

While the TCPA does address prior express consent, it does not cover revocation of consent. Courts across the country have spilt on the issue of how an individual can revoke prior express consent to be called, if they can revoke consent at all. *Compare Saunders v. NCO Financial Systems, Inc.*, 910 F.Supp.2d 464, 468 (E.D.N.Y. 2012) (holding that no provision in the TCPA "allows withdrawal of a voluntarily-given, prior express consent to call a cellular telephone number"), *with Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1255 (11th Cir. 2014) (finding

that the "TCPA's silence regarding the means of providing or revoking consent" means that "Congress intended for the TCPA to incorporate the common-law meaning of consent, including its revocation"). Courts holding that prior express consent is revocable under the TCPA have spilt on whether revocation must be in writing or if oral revocation is sufficient. *Compare Starkey v. Firstsource Advantage, LLC*, No. 07-CV-662A, 2010 WL 254156, at *6 (W.D.N.Y. March 11, 2010) (concluding nothing in the TCPA or the FCC's December 28, 2007 Declaratory Ruling supports the claim that verbal revocation is sufficient), *and Moore v. Firstsource Advantage, LLC*, No. 07-CV-770, 2011 WL 4345703, at *11 (W.D.N.Y. September 15, 2011) (following *Starkey* and other cases holding verbal requests are not sufficient to revoke consent under the TCPA), *with Osorio*, 746 F.3d at 1255–56 (concluding that the TCPA allows for oral revocation of prior express consent), *and Gutierrez v. Barclays Group*, No. 10CV1012, 2011 WL 579238, at *4 (S.D. Cal. February 9, 2011) (concluding oral revocation is sufficient under TCPA).

The FCC considered the issue of revocation of prior express consent in 2015 and found that "[b]ecause the TCPA does not speak directly to the issue of revocation, the Commission can provide a reasonable construction of its terms." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, 30 F.C.C.R 7961, 7993 ¶ 55 (F.C.C. July 10, 2015) [hereinafter "2015 FCC Ruling"]. The FCC construed the TCPA in favor of consumers and found that a reasonable interpretation allows "consumers to revoke consent if they decide they no longer wish to receive voice calls or texts." *Id.* at 7994 ¶ 56. The FCC further found that "[c]onsumers have a right to revoke consent, using any reasonable method including orally or in writing." *Id.* at 7996 ¶ 64. Put simply, "consumers may revoke consent through any reasonable means." *Id.* at 7993 ¶ 55.

The 2015 FCC Ruling did not address the specific revocation issue arising in this matter— whether revoking prior express consent to call a cellular telephone on one existing debt or account revokes consent to call that cellular telephone on all existing debts or accounts held with the caller. Nonetheless, the 2008 FCC Ruling provides insight on the matter with its references to prior express consent being debt specific. The FCC determined that providing a cellular telephone number to a creditor is prior express consent to call "regarding *the* debt." 2008 FCC Ruling at 564 (emphasis added). The FCC didn't find that providing a cellular telephone number to a creditor is prior express consent to call regarding *all* debts, just the specific debt that the number was provided in conjunction with. Further, "prior express consent is deemed to be granted only if the wireless

number was provided by the consumer to the creditor, and that such number was *provided during the transaction that resulted in the debt owed.*" *Id.* at 564–65.

The FCC's statements demonstrate that prior express consent is debt specific. For example, if Murray had only provided her cellular telephone number on her application for her Visa account and not her Scheels account, FNBO could not have called Murray's cellular telephone regarding her Scheels account under the TCPA. Because Murray provided her cellular telephone number, and therefore prior express consent for FNBO to call, on two separate applications for two separate accounts, she must revoke both of the consents to stop receiving calls from FNBO on her cellular telephone. The Court concludes that when Murray said "quit calling my cellular telephone" in response to a call from FNBO on her Scheels account, that was not a reasonable means to also revoke consent on her Visa account with FNBO. Murray could have employed reasonable means to revoke consent on her Visa account by stating during the call with FNBO on her Scheels account that she wished to revoke consent to call on all of her accounts, including her Visa account, or by answering a separate call from FNBO on her Visa account and revoking consent at that time in the same manner that she revoked consent during call on her Scheels account. As Murray only revoked her prior express consent for FNBO to call her regarding her Scheels account, FNBO still had Murray's prior express consent to call regarding her Visa account. Therefore, the 145 times that FNBO called Murray regarding her Visa account after the August 25, 2015 conversation were with Murray's prior express consent and were not in violation of the TCPA.

## IV. CONCLUSION

Murray's claim in Count I for statutory damages fails because FNBO did not violate the TCPA by placing automated calls to her cellular telephone. While she revoked her prior express consent for FNBO to call her cellular telephone regarding her Scheels account, she did not revoke her consent to call regarding her Visa account, and therefore the 145 calls FNBO placed to Murray regarding her Visa account were with her prior express consent.

Upon the foregoing,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**.

**DATED** this 6th day of January, 2017.

_____
JOHN A. JARVEY, Chief Judge
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

5